UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ASHLEY S.,      :
          :
  plaintiff,     :
          :
  v.        : CASE NO. 3:21-cv-1387(RAR)
          :
KILOLO KIJAKAZI,    :
ACTING COMMISSIONER OF  :
SOCIAL SECURITY,    :
          :
  defendant.     :

**<u>RULING ON PENDING MOTIONS</u>**

Ashley S. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g).  The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated January 25, 2021.  Plaintiff timely appealed to this Court.  Currently pending are plaintiff's motion for an order reversing or remanding her case for a hearing (Dkt. # 15-2) and defendant's motion to affirm the decision of the Commissioner.  (Dkt. #18-1.)

For the reasons that follow, plaintiff's motion to reverse, or in the alternative, remand is GRANTED and the Commissioner's motion to affirm is DENIED.

1

**STANDARD**

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Williams on Behalf of Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)).  Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." <u>Williams</u>, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to an individual who has a disability.  42 U.S.C. § 423(a)(1).  "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ."  42 U.S.C. § 423(d)(1).  To determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[1]

---

[1] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.  The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).  "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  Id.[2]

## PROCEDURAL HISTORY

Plaintiff initially filed for disability insurance benefits under Title II and Title XVI on May 23, 2019.  (R. 282 and 289.)[3] Plaintiff alleged a disability onset date of November 28, 2015. (R. 15.)  The application was denied on July 31, 2019, and again upon reconsideration on November 19, 2019.  (R. 15.)  Plaintiff then filed for an administrative hearing, which was held by ALJ Matthew Kuperstein (hereinafter "the ALJ") on January 5, 2021.[4] (R. 51-94.)  The ALJ issued an unfavorable decision on January

---

[2] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work."  Id.

[3] The Court cites pages within the administrative record as "R. ___."  Unless otherwise noted, the Court will cite to the pagination of the record from the SSA and not the court's internal docketing pagination.

[4] Plaintiff had an initial hearing on June 4, 2020.  However, at that hearing the plaintiff did not have attorney representation and the hearing was postponed to allow plaintiff to obtain counsel for a full hearing. (R. 38-50.)

25, 2021.  (R. 15–35.)  Plaintiff filed a request for review
with the Appeals Council on March 8, 2021.  (R. 279–81.)  The
Appeals Council denied plaintiff's request for review on August
20, 2021.  (R. 1–3.)  Plaintiff then filed this action seeking
judicial review.  (Dkt. #1.)

The Court notes that plaintiff filed a "Statement of
Material Facts" on February 15, 2022. (Dkt. #15-1.)  While
agreeing in significant part with the facts, the
Commissioner filed a responsive statement of facts along
with its motion to affirm the decision of the Commissioner.
(Dkt. #18-2.) The Court has fully reviewed and generally
adopts the facts set forth by the plaintiff and
supplemented by the Commissioner. While utilizing these
facts, the Court will further supplement throughout the
discussion as necessary.

### THE ALJ'S DECISION

Applying the five-step framework, the ALJ found at step one
that plaintiff had not engaged in any substantial gainful
activity since November 28, 2015. (R. 18.) At step two, the ALJ
found that plaintiff had the following severe impairments:
tendinosis and minor osteoarthritis of the right
acromioclavicular joint, obesity, and cervical spine impairment.
(R. 18.)

At step three, the ALJ determined that plaintiff had no impairments or combination of impairments equal to a Listing. The ALJ concluded that plaintiff did not meet or medically equal Listing 1.04 (disorders of the spine) "because the record does not establish limitation of motion of the spine or motor loss accompanied by sensory or reflex loss." (R. 20.) Further, the ALJ determined that plaintiff did not meet or medically equal Listing 1.02 (major dysfunction of a joint) because the record did not show "gross anatomical deformity and chronic join pain and stiffness with signs of limitation of motion" and because plaintiff did not have the required "involvement of one major peripheral joint." (R. 20-21.)

At step four, the ALJ determined that plaintiff had an RFC indicating an ability to perform light work. (R. 21.) The ALJ found, however, that plaintiff was limited

> To lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; To standing and/or walking with normal breaks for a total of six hours in an eight hour workday; To sitting with normal breaks for a total of six hours in an eight hour workday; To only frequent climbing or rams or stairs, balancing stooping, kneeling, crouching, or crawling and to never climbing ladders, ropes, or scaffolds; To only occasional overhead reaching with the dominant right upper extremity; and To no exposure to hazards such as heights or machinery.

(R. 21.)

At step five, the ALJ determined plaintiff had prior relevant work experience as a dietary aide. (R. 27.) The

6

ALJ concluded that plaintiff could not perform the past relevant work. (R. 27-28.) The ALJ relied on the testimony of a vocational expert ("VE") to determine that there were jobs within the national economy that plaintiff could perform, including document preparer, addresser, toy stuffer, price marker, mail sorter, and electronic assembler. (R. 28-29.)

Upon the completion of the five-step sequential evaluation process, the ALJ determined that the plaintiff was not under a disability between the AOD and the date of the decision.  (R. 29.)

## DISCUSSION

Plaintiff argues that the ALJ erred in a number of ways. First, that the ALJ erred in failing to properly evaluate and weigh the medical evidence in the record. (Dkt. #15-2 at 7-16.) Contained within this argument the plaintiff identified several alleged errors.  Second, and somewhat related to the first, plaintiff argues that the ALJ erred in determining the plaintiff's residual functional capacity ("RFC"). (Dkt. #15-2 at 16-17.)   Finally, that the ALJ erred at step 5 of the sequential evaluation process.  (Dkt. #15-2 at 17-26.)

The Commissioner responds to the claims of error by generally arguing that all of the ALJ's determinations are supported by substantial evidence and should be upheld.  (Dkt.

#18-1 at 6.  Based on the following, the Court GRANTS
plaintiff's motion for remand.

### I.    The ALJ Erred in his Evaluation of the Medical Record.

When an individual's impairment does not meet or equal a
listed impairment, the ALJ will "make a finding [of the
individual's] residual functional capacity based on all the
relevant medical and other evidence in [the] case record."  20
C.F.R. § 404.1520(e).  An individual's RFC is the most an
individual can still do despite his or her limitations.  20
C.F.R. § 404.1545(a)(1).  Plaintiff has the burden of
establishing a diminished RFC.  See Butts v. Barnhart, 388 F.3d
377, 383 (2d Cir. 2004).

In coming to an appropriate RFC, an ALJ is required to
review and evaluate the medical records and opinions.  The
regulations provide that the ALJ "will not defer or give any
specific evidentiary weight, including controlling weight, to
any medical opinion(s) or prior administrative medical
finding(s), including those from [the plaintiff's] medical
sources."  20 C.F.R. § 416.1920c(a).  The ALJ will consider any
medical opinions according to certain factors, including: (1)
whether objective medical evidence supports and is consistent
with the opinion; (2) the relationship between the medical
source and claimant; (3) the medical source's specialty; and (4)
other factors that "support or contradict a medical opinion[.]"

Id. §§ 404.1520c(c), 416.920c(c).  The ALJ must explain how he considered the "supportability" and "consistency" factors in the evaluation, but the ALJ need not explain how he considered the secondary factors unless the ALJ finds that two or more medical opinions regarding the same issue are equally supported and consistent with the record but not identical.  20 C.F.R. § 404.1520c(b), 416.920.

For the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." Id. §§ 404.1520c(c)(1), 416.920c(c)(1).  For the "consistency" factor, "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be."  Id. §§ 404.1520c(c)(2), 416.920c(c)(2).

### 1. Evaluation of Plaintiff's Need for a Cane.

Plaintiff devotes a significant portion of her brief to the argument that the ALJ erred in evaluating the medical evidence and opinions as it relates to Dr. Roy's prescription for, and plaintiff's continued use of, a cane. (Dkt. #15-2 at 7-12.)  The essence of plaintiff's argument is that the ALJ substituted his

9

lay opinion for that of a medical expert and thus the RFC determination is impermissibly based on the ALJ's interpretation of the medical record.

When determining an RFC, an "ALJ's conclusion need not perfectly correspond with any of the opinions of medical sources cited in his decision." Williams v. Comm'r of Soc. Sec., 366 F. Supp. 3d 411, 416 (W.D.N.Y. 2019).  However, since an ALJ is not a medical professional "[a]n ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute his own judgment for competent medical opinion." Quinto v. Berryhill, No. 3:17-CV-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017).  In a circumstance in which an "ALJ's RFC finding amount[s] to an improper substitution of h[is] own expertise or view of the medical proof [in place of] any competent medical opinion, [] remand is appropriate."  Henderson v. Berryhill, 312 F. Supp. 3d 364, 371 (W.D.N.Y. 2018).  Additionally, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Mungin v. Saul, No. 3:19 CV 233 (RMS), 2020 WL 549089, at *10 (D. Conn. Feb. 4, 2020).

Plaintiff was seen on multiple occasions by Dr. Bhaskar Roy. (R. 790-95 and 796-800.)  Dr. Roy was a specialist working at Yale Neurology at the time of his evaluation of plaintiff.

(R. 790.)  Plaintiff's first encounter with Dr. Roy was in
August of 2019.  Plaintiff was referred to Dr. Roy, and the
Neuromuscular clinic at Yale by a primary care physician to be
seen for "possible cervical spine myelitis based on C spine
MRI."  (R. 791.)  Dr. Roy noted that plaintiff had an MRI on
7/12/19 showing "abnormal Hyperintensity T2 weighted cord lesion
in proximal cervical spine without distortion."  (R. 794.)  Dr.
Roy indicated that this finding "could reflect myelitis" and
recommended another MRI and further follow up.  (R. 794-95.)

Another visit with Dr. Roy was held on July 14, 2020.
Considering the COVID-19 pandemic, this visit was held via
telephone and did not include an in-person evaluation. (R. 797.)
Notes from this visit indicate that plaintiff had suffered a
fall and had been seen at the emergency department. (R. 797.)
At the time of the fall, plaintiff had slipped on water and hit
her head. (R. 797.)  The record further indicates that Dr. Roy
reviewed the August 2019 MRI that was taken following the
previous visit. (R. 798.)  The review notes that the abnormality
noted previously was stable.  Dr. Roy recommended consultation
with a neurosurgeon "with consideration given to external
stabilization." (R. 798.)

Most importantly for purposes of assessing plaintiff's
claims of error by the ALJ, Dr. Roy also prescribed a cane for
use by plaintiff.  Dr. Roy stated that plaintiff "has upper

cervical spine instability.  I am concerned regarding her C-spine, and further fall may lead to severe consequences, including quadriparesis, and sensory loss, and she is aware of those." (R. 799.)  Dr. Roy continued by indicating that plaintiff was "not ready for surgery" and was "seeking alternative options/opinions." (R. 799.)

In evaluating the medical records and opinions in this case the ALJ noted on multiple occasions that plaintiff had been prescribed a cane by Dr. Roy.  In evaluating the longitudinal treatment history, the ALJ noted that some of the Yale Neurology records show "4+/5 strength in some muscle groups, but her strength has otherwise been described as 5/5." (R.24.)  The ALJ then indicated that the prescription was recent and was "immediately after she had a fall from slipping on water."  (R. 24.)  The ALJ added that "the preponderance of the evidence fails to reflect that the [plaintiff] will continue to need to use a cane for an ongoing period of at least a year."  The ALJ additionally noted that plaintiff had not yet had surgery on her cervical spine. (R. 24.)

Later in his decision, the ALJ discussed the medical source opinions in the record, including the records from Dr. Roy.  The single paragraph discussion of the records from Dr. Roy once again discusses his prescription of the cane and once again states the prescription came after the slip and fall and that

the preponderance of the evidence does not reflect the need for the cane for a year. (R. 27.)  The Court notes that both times the ALJ explained his reasoning for failing to accept the cane prescription in the RFC, the ALJ did not cite to any of the evidence (beyond the records of Dr. Roy) to support his position.

Plaintiff argues that the ALJ erred in the analysis of the cane and that it should have been included in the RFC. Specifically, plaintiff asserts that by not including the prescribed cane in the RFC because it was prescribed following the fall and was not going to be used for over a year, the ALJ impermissibly substituted his own lay opinion where medical opinion is necessary. (Dkt #15-2 at 9.)  Plaintiff argues that there are no records in evidence to indicate that the plaintiff would not need to use the cane and that the use of the cane is consistent with the findings of an unstable cervical spine. Further, plaintiff argues that the ALJ insinuates that the use of the cane was for the fall itself, however, the evidence indicates that Dr. Roy prescribed the cane in order to avoid significant and serious medical concerns if plaintiff were to fall in the future. (Dkt. 15-2 at 8).[5]

---

[5] There is passing refence in the ALJ's opinion and each party's motion discusses the failure of plaintiff to obtain surgery.  The Court is not convinced by the one-line entry in the ALJ decision that much weight was put behind this fact in excluding the use of the cane from the RFC.  However, to the extent that it was discussed, the Court notes that the cane prescription

The Commissioner responds to plaintiff's concerns regarding Dr. Roy and the cane by arguing that the decision to discount the opinion of Dr. Roy was proper and supported by substantial evidence.  The Commissioner notes the reference to a 4+/5 strength finding and further points to the fact that the ALJ noted that the prescription of the cane followed the fall and did not specifically indicate that it was needed for over a year.  (Dkt. 18-1 at 6.)  To support this assertion the Commissioner states that plaintiff did not need an assistive device in 2019 and was only using the cane "a little" after the fall (Dkt. #18-1 at 6 (citing R. 736 and 805).) Further, the Commissioner asserts that an ALJ is permitted to reject a medical opinion when it is contrary to that medical provider's treatment notes.  (Dkt. #18-1 at 7 (citing Monroe v. Comm'r of Soc. Sec., 676 Fed. Appx. 5, 8 (2d Cir. 2017).)  The Commissioner asserts that is precisely the case that we have here.

---

and referral to a neurosurgeon on July 14, 2020, was followed by visits with plaintiff's primary care physician in September and October.  These visits indicate a continued attempt to get to an appointment for the surgical consult, but also indicate difficulty with transportation.  (R. 805 and 812.) Additionally, the Court notes that these appointments, and the scheduled surgical consult, were during the height of the COVID-19 pandemic and mere months before the hearing before the ALJ in this matter in January of 2021. It does not appear to the Court that there is no evidence in the record to indicate that the plaintiff had refused to have surgery, rather that she was seeking out alternatives.  The issue surrounding surgery is not a reason to remand this decision, so it does not render the ALJ's decision not to use include the cane in the RFC proper.

The Court has reviewed the records at issue and considered the arguments of both parties in relation to the cane. Following the review, the Court agrees with plaintiff that the ALJ erred with respect to the prescribed cane.  To be clear, the Court does not opine that the plaintiff needs to use the cane, however, the ALJ has impermissibly substituted his lay opinion in this matter.

To begin, the Commissioner argues that the record indicates that plaintiff did not need the cane in 2019 and only used it "a little" after the fall. (Dkt. #18-1 at 6.)  To support this assertion the Court is directed to two pages in the record. First is a record from PA Adam Riso which indicates that in September of 2019 plaintiff "does not require assistive device for ambulation." (R. 736.)  This finding, ten months prior to the prescription from Dr. Roy, can charitably support the idea that the ALJ was indicating that the only need for the cane was the result of the fall plaintiff had in June of 2020. (R. 768.) That is to say, the ALJ seems to be asserting that the cane was used to recover from the fall.  However, that is not supported by the evidence.  Dr. Roy indicated that the use of the cane was to prevent further serious injury to the cervical spine in the event of another fall.  (R. 799-800.)

The second record is a treatment note from plaintiff's primary care physician. (R. 805.)  The Commissioner asserts that

the record indicates the plaintiff was only using the cane "a little." (Dkt. #18-1 at 6.)  The implication is that the plaintiff did not need to use the cane much. It is worth noting that the ALJ did not specifically cite this medical record or state that he interpreted the record to suggest that the plaintiff was not using the cane much or that the plaintiff would not need to use the cane for more than twelve months. Instead, the Commissioner cites this record and argues for this conclusion in her brief. Thus, the Court is concerned that the Commissioner has essentially provided its own interpretation of the medical record.

Further complicating the issue is the fact that the medical record that the Commissioner (as opposed to the ALJ) has relied upon has been misstated or mischaracterized.  The full treatment note reads: plaintiff "[h]as been walking a little with the cane.  Begins having increased nerve pain when she sits after being active. Discussed the possibility of a walker with a seat to promote more activity and she can rest." (R. 805.)  When the treatment note is read in totality and in context, the note appears to indicate that the plaintiff was not walking much due to the increased nerve pain.  In suggesting the possibility of a walker, the primary care physician seems to be suggesting that it would provide the ability for the plaintiff to sit more often and perhaps increase her activity level. To the extent that the

Commissioner argues that if there are two different ways to interpret this note, that means there is substantial evidence in the record, the argument fails for two reasons: (1) the ALJ did not cite to this treatment note or offer the interpretation that the Commissioner has offered in her brief, and (2) the record does not appear to state what the Commissioner asserts it states.  Therefore, there is no substantial evidence in the record for that proposition.

The presumption that these records support the ALJ's finding regarding the cane is misplaced.  The timing of the prescription does not appear, from any record available in the evidence, to relate to injuries from the fall months prior when the plaintiff slipped on water.  The words of the prescribing doctor indicate it is based on a concern related to the cervical spine condition of plaintiff and the impact that an additional fall could have on plaintiff. (R. 799-800.)  The Court notes that the cervical spine condition was found to be severe by the ALJ at step two of the sequential evaluation process.  (R. 18.)

The Commissioner also argues that the ALJ properly evaluated the medical opinion of Dr. Roy and determined it was internally inconsistent, as such the ALJ was not substituting his own expertise.  (Dkt. #18-1 at 7.)  To support this assertion, the Commission cites to Monroe v. Colvin, 676 F. App'x 5 (2d Cir. 2017).  In Monroe, the ALJ rejected the medical

opinion of a Dr. Wolkoff while relying on that doctor's treatment notes to arrive at an RFC. Monroe, 676 F. App'x at 7-8. The Court determined that was proper because there was substantial evidence to contradict the statement and support the determination by the ALJ found in the notes. Id. That is not the case here. The ALJ in this matter cites to the initial visit with Dr. Roy to indicate that there was full strength in extremities, symmetrical reflexes, and normal gait. (R. 27 (citing R. 792-93).) However, in light of the reasoning provided by Dr. Roy regarding the prescription of the cane, it is not expressly clear in the record or the decision how these records are inconsistent with the need for a cane. (R. 799.) As stated above, the cane was prescribed out of concern for a future fall and the impact such a fall would have on plaintiff's condition.

The Court additionally notes that the determination for the prescription was made by Dr. Roy without the benefit of an in-person examination. The Commissioner and the ALJ would assert that cuts against the prescription. (R. 27 and dkt. 18-1 at 11.) However, another interpretation of that would suggest that the doctor's concern was high enough that even without seeing plaintiff, the doctor believed it was important to prescribe the cane.

The Court also wishes to address the argument that the evidence does not support a need for the cane for at least 12 months.  The ALJ asserted twice in his decision that "the preponderance of the evidence fails to reflect that the claimant will continue to need to use a cane for an ongoing period of at least a year." (R. 24, 27.)  The Commissioner adds to the argument by stating that the doctor "did not make any further statements about when to use the cane or if it was necessary to work." (Dkt. #18-1 at 11.)  Further, that the "prescription from the doctor does not contain any further direction to assess the cane's [impact] on Plaintiff's ability to work, which is why the ALJ concluded that the evidence did not support an RFC limitation on cane usage." (Dkt. #18-1 at 11.)

However, the Court notes that the ALJ did not expound as broadly as the Commissioner does in her brief regarding the reasoning for concern related to the 12-month duration.  While perhaps those arguments may make sense, it is not clear that they were considered by the ALJ at the time of the opinion.

Additionally, some of the cases dealing with the issue of an ALJ substituting his or her own opinion result in the determination that there was a gap in the record.  For instance, in Mungin, a case cited by plaintiff, the court determined that the ALJ had impermissibly substituted his own opinion and the error created a gap in the record.  *See* Mungin, 2020 WL 549089,

at *10.  In that instance, the court identified that there were potentially many other avenues the ALJ could have gone down to fill the gap. Id*.  Similarly, in the case before the Court[6] it appears that, by the words of the Commissioner, the records from Dr. Roy are unclear or potentially create a gap in the record related to the reasoning and duration of the cane prescription.

If that was the case, the ALJ had the affirmative duty to develop the record "in light of 'the essentially non-adversarial nature of a benefits proceeding.'"  Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Echevarria v. Secretary of HHS, 685 F.2d 751, 755 (2d Cir. 1982)); see also Swiantek v. Commissioner, 588 F. App'x 82, 83-84 (2d Cir. 2015).  "When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant."  Santiago v. Astrue, No. 3:10-cv-937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing Pratts v. Chater, 94 F.3d 34, 37-38 (2d Cir. 1996)).  It appears to the Court that, in this specific instance, information from Dr. Roy could be highly important in the disability determination.  Dr. Roy, a treating medical source,

---

[6] The Court notes that plaintiff did not expressly argue that the ALJ failed to develop the record, and the Court is remanding this decision regardless of this discussion.  However, as these issues appear to dovetail with one another, the Court wishes to bring this issue to the ALJ's attention upon remand.

could explain precisely why and for how long he intended plaintiff to utilize a cane.

In any event, the Court has determined that the ALJ erred in substituting his own lay judgment in failing to include the use the cane in the plaintiff's RFC.  The record indicates that the cane was prescribed by one of the plaintiff's medical providers.  There are further references, by plaintiff's primary care physician, to indicate continued use of the cane. Specifically, listed under current medications, APRN Allyn, noted "cane as directed" in September and October 2020.  (R. 801 and 811.)  Those records appear to be the most recent treatment notes at the time of the ALJ hearing in January 2021.  Further, there is no medical evidence or opinion to indicate that the use of the cane was temporary or related to injuries incurred during plaintiff's slip and fall.  Additionally, as per the earlier discussion, the evidence cited by the Commissioner to support those assertions is not persuasive and appears to be misconstrued.  The Court does not opine or hold any view on the merits of plaintiff's claim and whether or not the cane should be included in the RFC.  Rather, the Court is not satisfied that the ALJ's decision not to include the cane was supported by substantial, if any, evidence in the record, nor was the evaluation of Dr. Roy's medical opinion sufficient in regards to supportability and consistency.

As indicated previously, plaintiff has supplied several other arguments related to alleged errors by the ALJ.  Having determined that remand is appropriate for the above reason, "[t]he Court declines to address the plaintiff's remaining arguments because upon remand and after a *de novo* hearing, [the ALJ] shall review this matter in its entirety." Mungin v. Saul, No. 3:19 CV 233 (RMS), 2020 WL 549089, at *10 (D. Conn. Feb. 4, 2020)(citing cases in accord).

## CONCLUSION

Based on the foregoing reasons, plaintiff's motion for an order to remand the Commissioner's decision (Dkt. #15-2) is GRANTED and the Commissioner's motion to affirm that decision (Dkt. #18-1) is DENIED.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).

SO ORDERED this 31st day of March, 2023, at Hartford, Connecticut.

_____/s/_____
Robert A. Richardson
United States Magistrate Judge